LYON METALLIC MFG. CO. v. COLUMBIA MACH. WORKS et al.

(Circuit Court, E. D. New York. March 1, 1911.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GEAR CASE.

The Waters patent, No. 789,306, for a gear case, adapted to cover the reduction gear of electric motors of trolley cars, was not anticipated, and discloses invention; also *held* infringed by certain styles of gear cases which were made by defendant when the suit was commenced, but not by the style afterward adopted, and which was the only one made at the time of trial.

In Equity. Suit by the Lyon Metallic Manufacturing Company against the Columbia Machine Works and the Malleable Iron Company. Decree for complainant.

Cheever & Cox, for complainant.
Martin S. Lynch, for defendants.

CHATFIELD, District Judge. One Waters obtained upon the 9th day of May, 1905, upon an application filed December 30, 1904,

patent No. 789,306, covering an invention relating to gear cases, especially those adapted to cover the reduction gears of electric motors for street railway cars. In general, it is sufficient to note that the motor of a trolley car is in ordinary use located near the front axle. This axle, receiving all the jars and shocks from the wheels, and turning upon bearings, is fitted with a toothed gear, engaging with a pinion gear placed upon the extreme end of the motor shaft, which, in practice, revolves at a speed some four times as great as the axle of the car, in inverse proportion to the relative size of the gear wheels in question. The position of these gears making them liable to impact of mud, stones, and other obstructions, as well as the jar and shock of the movements of the car wheels themselves, renders it difficult to protect the teeth of the gear. Hence, to preserve necessary lubrication while excluding dirt and protecting the teeth, a cover or case is usually supplied. The common form of gear case or protection for these gears has been a pear-shaped box, of sufficient depth to include the gear wheels themselves, and with an opening at approximately the center of the box for the axle carrying the large gear to pass completely through. At the small end of this pear-shaped box, and upon the face of the box toward the center of the car, is also an opening for the shaft of the motor, while the opposite or outside of the gear case comes in close proximity to the wheel upon that side of the car. Saving of weight, with sufficient strength and rigidity to perform durable service, are necessary elements in the gear case. Nearness to the street surface, together with the impossibility of furnishing support from the car or truck above the springs, give but little opportunity for varying the methods of holding such gear case in place.

According to the testimony in this action, cast or malleable iron, and wood with metal bindings were first used in making these cases upon trolley cars, as the use of such cars developed in this country. All support by attaching the case to the frame had to be upon the inner side; that is, toward the center of the car. It was ordinarily furnished by one main support, with some aid in locating and maintaining a steady position of the gear case, furnished by bolts near one or both ends of the case. On cars such as sweepers, and upon some of the older forms of trolleys, a platform under the gear case itself made it unnecessary to use the side support. The desirability of being able to take the gear case off, if the body of the car were removed, or if the gears had to be reached from the under side, compelled a division through the middle of the gear case, in the plane of the two axes. It naturally followed in practice that the two portions of the gear case were bolted together at each end, and the inner surface of the upper half, on each side, was so constructed as to cause the flow of oil, which might be spattered against the inside of the case, to run inside rather than outside the lower half. In some of the sheet or malleable iron cases, cast-iron flanges were fitted around the edges of the upper and lower halves, and in the wooden cases a tongue and groove matching was used, so as to obtain a close contact and an easily adjusted joint, between the two portions.

Mr. Waters, who has assigned his patent duly to the complainant, recognized the great saving in weight in a sheet metal case, and also the added rigidity and strength of construction which could be obtained by making the edges and joints of such a sheet metal case constitute a frame by methods of riveting and bracing. He desired to preserve the durability and rigidity of such a case, even when subjected to the lateral or bulging strain of support from one point, upon but one side of the case, and realized, also, that, if this point of support were in the lower half of the case, the bulging strain would be manifested mainly at the joint; that is, at the upper edges of the lower half upon each side. He therefore described a gear case in his patent of sheet metal (in practice it is now shown that sheet steel is generally used), and, to meet the precise point of invention which has been referred to, he inserted the following, which is the only claim of the patent involved in the present suit:

"2. A gear case formed in two halves and having parallel sheet-metal sides; in combination with a single supporting-bracket rigidly attached to one side of the lower half of said case, whereby the weight of the case tends to cause the bulging of the supported side, the upper half of . the case having a flange adapted to engage the outsides of the upper edges of the lower half to thereby prevent the bulging of the sides of said lower half."

In this claim the flange upon the upper half, to engage the edges of the lower half, was, as described, a continuous strip of metal, similar to the casting upon the old cases, which had followed the form of the tongue and groove matching of the wooden case above referred to. But Mr. Waters, realizing that such a flange need not be formed out of the metal piece making the side itself, and that it might be advantageous to fasten a separate over-lapping strip upon the lower edge of the upper half, provided for this alternative construction in his patent.

The defendant has been manufacturing gear cases for a considerable period of time, and has introduced an exhibit, called "Defendant's Exhibit B," of the form of gear case which has been sold by the defendant since its attention was called to the Waters patent. This is the only type of gear case manufactured and supplied by the defendant at the present time. In this gear case the support is afforded by two brackets instead of one, attached to the upper half of the case, on the side toward the center of the car. The general details of construction and methods of securing rigidity, by riveted joints and plates, are similar to all of the other cases shown. The case is made of sheet steel, and differs only from the type of case manufactured by the defendant, as to which infringement was claimed at the time this action was started, in that the supports have been changed from the lower to the upper half, and that these supports or brackets rest and are bolted down upon the bearing surface, instead of being bolted up thereto from the under side.

The gear case (Exhibit B) and also those complained of as shown in the "Complainant's Exhibits 1 and 2," do not have a continuous flange or strip overlapping the entire upper edge of the lower half,

but do have on each side two narrow straps or plates riveted to each face of the upper half, upon the outside, and extending about an inch below the joint, in such position that the lower half of the case will pass inside them when the halves are bolted together.

These straps or plates serve the purpose of guides in fastening the case together, and act in the same way as the flanges or strips described in the Waters patent, when subjected to any strain tending to cause the lower half of the case to bulge. In that sense they comply with the requirements which Mr. Waters was seeking to meet in his patent. But an inherent difference between the present type of gear case made by the defendant and the Waters patent lies in the change of the point of support. The weight of the gear case alone, if supported from the side of the lower half, toward the center of the car, would cause a bulging strain upon both sides of that lower half, which would be rendered greater by any additional strains from the movements of the car. If the point of support be changed to the upper half, the strain caused by the weight of the case and by the movements of the car would have a tendency to press the upper half in, both on the side where the support was attached and the opposite side. That is, the strain would be a collapsing rather than a bulging strain, and the lower half (being supported by the fastenings at each end, and being subjected only to the downward pull caused by the weight of the lower half itself, or to chance blows from obstacles thrown against the case) would need no protection against either the tendency to bulge, or the tendency to collapse, further than such as would be obtained by sufficient rigidity to preserve the general form and shape of the case.

Hence, the defendant at the present time, so far as the record shows, is not infringing the patent, and a gear case of the type represented by Exhibit B, as was admitted at the trial, is of a form which the defendant has a perfect right to place upon the market, so far as the Waters patent is concerned.

The only questions therefore which are important in the case are the general questions of the validity of the patent, and whether or not the type of gear case manufactured and on the market at about the time the suit was commenced, and typified by Complainant's Exhibits 1 and 2 are infringements such that an injunction should issue against the defendant's possible repetition of that infringement.

As to the validity of the patent but little need be said. The idea of supporting the case in the manner indicated, and of obtaining a rigid joint which would exclude dirt, protect the gear, and allow the catching and saving of waste oil, without using an unduly heavy case, was satisfactorily and easily accomplished by the idea of the Waters patent. Its commercial success is shown by the testimony, and, if the construction of the street car truck makes it more convenient to use a support attached to the lower half of the gear case, the Waters patent undoubtedly covers an idea which was worthy of being called invention. No record of any earlier patents has been introduced, and there is nothing to question the validity of the Waters patent (conceding that it contains meritorious invention, as has been

suggested) except the testimony of two or three witnesses as to the use of cases shown by Exhibits C, E, and F.

Some objection was made by the complainant as to the use of these exhibits, inasmuch as they were not formally marked in evidence, but the record shows that they were physically present and used by the witnesses in making their depositions, and they certainly constitute physical exhibits in the record, even though not marked by any officer of the court, having been produced and identified by the descriptions of the record. These cases show a flange or tongue and groove matching, which would have some tendency to resist a bulging or lateral strain. They show an attempt in these earlier cases to secure an exact fitting between the top and the lower halves and a tight joint for obvious reasons. The fact that these cases were supported upon tables or platforms, and that the lateral strain to be considered was only that of their own ability to stand upon a horizontal surface without collapsing, does not show any knowledge on the part of those using these cases (nor would it teach a mechanic or the public) that a case could be successfully used with nothing but the side support. The application of the flanged joint was the point of Waters' invention, and although a somewhat similar joint had been previously used in these cases, under a different method of support, nevertheless Waters' appreciation of the possibility of making a double use of that joint, and the advantage thereby presented if the gear case was supported from the side would seem to have been original with him, and not to have been appreciated or understood until his patent was issued. The testimony of one witness, Remelius, and the production of a blue print, showing that at some time around the date of the application by Waters side brackets were used in supporting the wooden cases, and that since that time these wooden cases, in so far as they have been used, have been supported in that fashion, is not sufficient to invalidate the Waters patent, especially as the evidence of the date at which this use was begun is not definite, and does not clearly antedate the time of Waters' application.

We have left, therefore, only the question of infringement as presented by the type of case shown in Exhibits 1 and 2, and this question of infringement comes down to one proposition, namely, whether the straps or narrow plates, used on these exhibits, are but another form, that is, an equivalent for the flanges or strips of the Waters patent, and whether, if thereby the Waters patent was infringed, an injunction should issue. As has been said, the purpose of these straps or vertical strips is said by the defendant to be to merely act as guides in clamping the cases together, and incidentally to prevent a sudden bulging of the lower half. But it is apparent to any one, whether he be workman or layman, that a lateral strain upon the gear case, supported at the side of the lower half, would be arrested and the sides held in alignment by these vertical strips. Waters expressly reserved in his patent the right to substitute strips, which he implied he would run horizontally along the edge of the joint, but the mere saving of weight and the change in position, without altering the function of the plates of metal, even

assuming that the results be not as satisfactory, would not seem to get the form of construction away from the idea expressed and shown in the Waters patent in the claim in question. It would seem therefore, that a construction like Exhibits 1 and 2 could be enjoined as an infringement of the Waters patent, and this action, having been started for the purpose of preventing what was then an apparent infringing use, was properly brought for an injunction with the incidents thereto.

The type of gear case manufactured by the defendant and the record in the case show that the necessity for injunction is no longer present, and the rights of the complainant will be entirely protected if it be given an accounting for any damage which resulted from the manufacture and sale of gear cases like Exhibits 1 and 2, with a determination that claim 2 of the patent is valid, and that it is entitled to an injunction preventing any further use of the type of gear case infringing the patent.

The necessity for such an injunction having been removed by the admitted action of the defendant in apparent good faith, an actual issuance of the injunction will be temporarily stayed, so long as during the life of the patent the defendant continues to act with strict observance of all appearances, but may be applied for at any time, if deemed necessary, at the foot of this decree.